[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried in New York City on June 1, 1974. CT Page 3378 The plaintiff wife has resided in the State of Connecticut for more than one year next preceding the date of the filing of the complaint. There are no children issue of the marriage. It is a first marriage for the plaintiff and a second marriage for the defendant. The defendant has three children from his first marriage, none whom are minors. The evidence presented indicates that this marriage has irretrievably broken down, and judgment may enter dissolving the marriage on that ground. The wife, age fifty-six, is in good health. She works out on a daily basis many times a week. She does this in some instances with the assistance of a personal trainer. She is an avid health enthusiast and has authored a book, "Thirty Days to a Sexier You." She was a textile designer, going to school and working on a part-time basis. She attended the Rhode Island School of Design and The Fashion Institute of Technology. In 1974, she was earning approximately $12,000 per year. A the time she married her husband, a management consultant, he was experiencing serious business problems. The plaintiff, subsequent to her marriage, continued to work in the textile business and in her own business from the time of their marriage until she went to work with her husband in 1989, on a full-time basis. Prior to this, she contributed her earnings and the parties pooled their income. From the time of their marriage to the time that she became a full-time employee of her husband, she entertained with her husband for social reasons and business purposes. She was an asset to his business and helped him network socially for purposes of generating income. In 1989, the defendant started Joel C. Wolff Associates, and he was the sole owner of this entity. He continued on as a management consultant that involved his expertise in physical distribution. The plaintiff became very involved in getting the business started and initially worked twenty-five hours per week painting, setting up an office in their Ridgefield home, and arranging files. Within a few months, she became even more involved working in excess of forty hours per week arranging and attending business luncheons and dinners with the defendant and his clients and prospects. Defendant's business took them frequently to the West Coast where she continued to help the defendant with his business. This entailed establishing a business vacation home where for several years they went back and forth to the West Coast at least twice a month.
The defendant, who is sixty-nine, started working for Drake, Sheahan, Stuart Dougald in 1997. He has a B.S. degree in Manufacturing Management from Syracuse University and he did extensive graduate studies at City College of New York in the CT Page 3379 same discipline. He became a partner in Drake-Sheahan in 1967, but shortly thereafter, Drake-Sheahan had serious business problems. The defendant gave up his pension interest in order to help keep the company afloat. Drake-Sheahan, in 1984, was acquired by Main-Hurdman an accounting and consulting firm that eventually merged with Peat-Marwick. This merger occurred in 1987. His pension rights were transferred to Peat-Marwick. In 1989, he resigned from Peat-Marwick on an involuntary basis, but kept pension rights that dated back to 1957. Plaintiff concedes that defendant worked extremely hard and was a workaholic.
Testimony supports the claim that defendant had a terrible temper particularly when it came to dealing with the plaintiff. Despite her efforts and support, the defendant became very argumentative and belittled the plaintiff on numerous occasions in the presence of others. The defendant was very thoughtful and considerate of others that might be in the company of the parties, but he could not help but attempt to provoke and agitate the plaintiff. Serious trouble in the marriage began about three or four years prior to March 15 1997, the date the plaintiff left the marital home in Ridgefield. She testified that he was subject to frequent temper tantrums and rages. He swore at her and used opprobrious language. She also testified that she had been assaulted by him in August of 1996, after he had been drinking extensively. He had, prior to that time, threatened to punch her out. She claims that she was the victim of rough sex on his part. Defendant refused to go to therapy claiming that if you needed therapy, the marriage was already over. The defendant offered testimony that plaintiff was involved with a golf professional who had been giving her golf lessons. However, none of the witnesses who attempted to support this claim could testify as to any sexual misconduct on the part of the plaintiff. It was the testimony of two witnesses that the plaintiff discussed her friendship with the golf professional, but most of the testimony boiled down to infatuation on the part of the plaintiff rather than any actual sexual activity. Because of the relationship between the witnesses, who testified to plaintiff's confidence and the defendant, the Court looks upon their testimony with skepticism.
It is clear from the evidence that plaintiff is in excellent health. She has been educated primarily in the textile field, but in 1989 when she began working in defendant's business, she showed a great deal of ingenuity and expertise. She essentially managed defendant's entire business and at the same time was supportive in generating new business and keeping the business that had already CT Page 3380 been established by the defendant. She is in good health and very energetic. She does not have the technical business skills that are probably required if she were to stay in this field, but she could acquire these easily. The plaintiff will never earn substantial income, but will be able to supplement her income that will allow her to continue to maintain a lifestyle that is similar to the one that she presently enjoys. The defendant claims an assortment of maladies including high blood pressure, diabetes, protenitis (leaking of protein from kidney into urinal tract). He had a hip replacement in 1992 and has arthritis in the spine as well as a prostrate problem. Yet claiming strong genetics, he thinks he will make it to age eighty-seven. He claims that he is retired and basically closing down his existing business. It is unlikely that a person of his high energy level and earning capacity will just drift off into the sunset.
The Court finds the defendant responsible for the breakdown of the marriage.
 ORDERS
1. The Court orders a dissolution of the marriage of the parties.
2. The marital residence located at 50 Fulling Mill Lane, Ridgefield, Connecticut, shall be immediately listed for sale at a listing price of $400,000. Linda Hannah of Caldwell Banker in Ridgefield shall be the listing broker Any offer received of $375,000 or more shall be accepted by the parties. If no offer has been received within ninety days of listing, the listing price shall be reduced to $375,000, and any offer received of $350,000 or more shall be accepted by the parties.
The proceeds from the sale of the marital residence, after the payment of the mortgage and the normal and customary expenses of sale, shall be divided equally between the parties, provided, however, that the defendant shall receive a credit for the mortgage principal payments made since June 1, 1997, and the date of judgment herein, because the plaintiff has been obstinate in expediting the sale of the marital home. The plaintiff shall have unlimited access to the premises in order to prepare the marital home for sale and to expedite its marketing.
The Court shall retain jurisdiction over all aspects of the sale of the Ridgefield real property. CT Page 3381
3. The parties are joint owners of a timeshare located in New Orleans Louisiana. The defendant shall transfer all of his right, title and interest in said timeshare to the plaintiff. Plaintiff shall be responsible for any and all carrying costs incurred subsequent to judgment herein.
4. The defendant shall pay to the plaintiff the sum of $400 per week as alimony. The alimony shall terminate upon the first of the following events: the death of the plaintiff; the death of the defendant; the remarriage of the plaintiff; or five years from date of judgment. The defendant shall provide plaintiff with copies of his 1040 IRS form, together with all W-2 forms and 1099 forms received by him annually. This exchange shall occur on or before February 15th of each year. Any substantial change of income generated by employment by either party shall be considered in any claim for modification during the five year period.
5. Plaintiff shall transfer any and all interest she may have in the 1985 Porsche automobile to the defendant, and plaintiff shall retain her interest in the Saab automobile that she has been operating for some period of time.
6. Any sums due the plaintiff or defendant from Steven Wolff or Edward Vossen shall be equally divided by both parties.
7. All stocks, bonds, and mutual funds valued at approximately $4700, and held by Newberger and Berman, shall be equally divided by the parties.
8. Defendant shall have the black leather sofa, Greta Garbo/Al Hirschfield character, and end tables in the den, as well as the silverized ice bucket. Plaintiff shall have the Chinese wallpaper painting, and the silver café au lait set.
9. All frequent-flyer miles shall be the exclusive property of the defendant.
10. The plaintiff and defendant shall each pay $1000 of Peter Belmont's bill totaling $2000 within thirty days from judgment herein.
11. Defendant shall contribute $5000 to the payment of attorneys fees within sixty days of date of judgment. CT Page 3382
12. Due to a substantial change in circumstances, and after hearing, the order for temporary alimony entered on December 18, 1997 is reduced from $800 to $400 per week effective January 11, 1999 to date of judgment.
13. Defendant shall continue to provide health insurance for the plaintiff so long as he is required to pay alimony.
14. Because of defendant's age and health, he shall not be required to maintain life insurance on plaintiff's behalf. The cash value of defendant's life insurance policies, i.e., All America, Equitable, and National Service Life shall be divided equally between the parties. If defendant's first wife predeceases the defendant, any proceeds that defendant may acquire shall also be divided equally by the parties.
 RETIREMENT ACCOUNTS
The parties have, through their joint effort, accumulated $1,163,000 exclusive of interest, etc., in retirements accounts that are presently being held in defendant's name by Bear Stearns (see Schedule A). The plaintiff shall receive 45 percent of the defendant's retirement accounts, less any taxes paid thereon by the defendant. Defendant is ordered to rollover into an account designated by the plaintiff 45 percent of these accounts with interest and dividends accrued as of the date of judgment of dissolution. It is the Court's order that any tax obligation relating to the division of these assets be shared equally by the parties.
The plaintiff's IRA, having a value of $36,500, and including any accrued interest, shall be divided equally between the parties.
The defendant presently receives a pension consisting of two parts. The KPMB pension pays $2891 per month and the Aetna pension $150 per month or a total of $3041. The defendant shall pay to the plaintiff $1520.50 per month, and said payments shall be secured by a Qualified Domestic Relations Order. Monthly payments shall commence April 1, 1999. The Court shall retain jurisdiction over the implementation of the Qualified Domestic Relations Order.
Owens, J. CT Page 3383
 SCHEDULE A PENSIONS AND RETIREMENT PLANS AND OTHER FUTURE ASSETS
Held at Bear Stearns for Independence Asset Management:
__________________________________________________________________________ | Old Account | New Account | Owner | Amount | | No. | No. | | | |_____________|_________________|_________________________|_______________| | 30204 | 34529 | Keogh/Profit Sharing | $ 2,709.00 | |_____________|_________________|_________________________|_______________| | 30205 | 34528 | Keogh Pension | 2,382.00 | |_____________|_________________|_________________________|_______________| | 30206 | 34531 | Profit Sharing | 53,660.00 | |_____________|_________________|_________________________|_______________| | 30207 | 30207 | Pension | 68,677.00 | |_____________|_________________|_________________________|_______________| | 30208 | _ | Defined Benefit | 517,947.00 | |_____________|_________________|_________________________|_______________| | 34023 | _ | IRA Rollover | 513,447.00 | |_____________|_________________|_________________________|_______________| | Held at Neuberger Berman (joint) | 4,571.00 | |_________________________________________________________|_______________| | TOTAL | $1,163,000.00 | |_________________________________________________________|_______________|